UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LUIS HERRERA and ANDY HERRERA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EOS IT MANAGEMENT SOLUTIONS, INC. and EOS UNIFIED SOLUTIONS, INC.,<br><br>Defendants. | Case No. 20-CV-01093-LHK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION UNDER SECTION 216(B)** |

Plaintiffs Luis Herrera and Andy Herrera (collectively, "Plaintiffs"),[1] on behalf of themselves and all others similarly situated, bring this action against Defendants EOS IT Management Solutions, Inc. and EOS Unified Solutions, Inc. (collectively, "Defendants").  Before the Court is Plaintiffs' Motion for Conditional Collective Action Certification Under Section 216(B), ECF No. 30 ("Mot.").[2]  Having considered the parties' briefing, the relevant law, and the

---

[1] On May 18, 2020, former named Plaintiff Juan Gonzales Ruiz, along with opt-in Plaintiffs Christopher Barthelemy, Michael Rodriguez, and Tevin Bonilla, filed a Stipulation of Dismissal Without Prejudice as to their claims.  ECF No. 24.

[2] Plaintiffs' motion for conditional collective action certification contains a notice of motion

1

Case No. 20-CV-01093-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION UNDER SECTION 216(B)

United States District Court
Northern District of California

1  record in this case, the Court GRANTS Plaintiffs' Motion for Conditional Collective Action

2  Certification.

3  **I.      BACKGROUND**

4  **A. Factual Background**

5  Plaintiffs allege that Defendant EOS IT Management Solutions, Inc. is a Delaware

6  corporation headquartered in Santa Clara, California, and that Defendant EOS Unified Solutions,

7  Inc. is a Delaware corporation headquartered in Santa Clara, California.  Complaint at ¶ 17–18,

8  ECF No. 1 ("Compl.").  Plaintiffs further allege that "Defendants represent themselves to the

9  general public as one company operating at multiple locations.  They share employees, have a

10 common management, pool their resources, operate from the same headquarters, have common

11 ownership, and have the same operating name." *Id.* at ¶ 26.  Defendants operate a nationwide

12 information technology services company, which provides IT installation and support to

13 companies in the United States. *Id.* ¶ 34.  Defendants allegedly employ "Field Engineers" to

14 install IT and audiovisual equipment at clients' offices. *Id.* at ¶ 35.

15 Plaintiff Luis Herrera alleges that he was employed as a Field Engineer by Defendants

16 from June 2015 to May 2018 in Texas. *Id.* at ¶ 36.  Plaintiff Andy Herrera alleges that he was

17 employed as a Field Engineer by Defendants from January 2017 to August 2018 in New York. *Id.*

18 at ¶ 38.

19 Plaintiffs allege that their job duties consisted of driving to clients' offices and installing

20 teleconferencing equipment, including routers, tables, and screens for videoconferencing. *Id.* at ¶

21 39.  Plaintiffs also performed tasks such as measuring rooms to properly install equipment,

22 carrying cables and heavy equipment, and cleaning rooms after installation was complete.

23 Plaintiffs further allege that during their employment, they frequently worked more than 8

24 hours per day and 40 hours per week, and often worked more than 60 hours per week. *Id.* at ¶ 40.

26 paginated separately from the memorandum of points and authorities in support of the motion. ECF No. 30 at 2.  Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with the same pagination.

2

28 Case No. 20-CV-01093-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION UNDER SECTION 216(B)

*United States District Court*
*Northern District of California*

1    Plaintiffs allege that putative collective action members also regularly worked more than 8 hours

2    per day and 40 hours per week, and often worked more than 60 hours per week.  *Id.* at ¶ 42.

3    Plaintiffs also were allegedly not provided with a meal or rest break during the day.  *Id.* at ¶ 59.

4    Furthermore, Plaintiffs were allegedly not paid overtime compensation, despite working

5    hours that qualified them for overtime pay.  Instead, Plaintiffs were paid a salary without overtime.

6    *Id.* at ¶ 44–45.  Putative collective action members also allegedly were paid a salary without

7    overtime pay.  Defendants allegedly classified both Plaintiffs and putative collective action

8    members as exempt from overtime.  *Id.* at ¶ 49.  Plaintiffs argue that this was a misclassification

9    because the duties that Plaintiffs and the putative collective action performed were not exempt

10   from overtime pay under the Fair Labor Standard Act ("FLSA").  *Id.* at ¶ 50–53.

11   Finally, Plaintiffs allege that "Defendants' conduct . . . was willful and in bad faith."  *Id.* at

12   ¶ 58.  Plaintiffs further allege that "Defendants knew of the requirements to pay overtime and

13   intentionally and/or recklessly chose to disregard it.  Defendants operate a large company and pay

14   overtime to some of their employees.  However, they refused to pay the Plaintiffs and Class

15   Members overtime pay."  *Id.*

16   **B.  Procedural Background**

17   On February 11, 2020, Plaintiffs filed the instant action against Defendants.  ECF No. 1

18   ("Compl.").  Plaintiffs alleged ten causes of action, including: (1) Failure to pay overtime

19   compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; (2) Failure to pay

20   overtime compensation under the California Labor Code §§ 510, 558, and 1194; (3) Failure to

21   provide off-duty meal and rest periods under California Labor Code §§ 218.5, 226.7, and 512; (4)

22   Failure to reimburse Plaintiffs for necessary expenditures under California Labor Code § 2802; (5)

23   Failure to furnish wage statements under California Labor Code § 226; (6) Failure to pay all

24   wages upon separation from employment under California Labor Code §§ 201, 202, and 203; (7)

25   Unlawful and/or unfair competition law violations of California Business & Professions Code §§

26   17200-17208; (8) Failure to pay overtime compensation under New York Labor Law § 190 and

27

28

3

Case No. 20-CV-01093-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
UNDER SECTION 216(B)

United States District Court
Northern District of California

650; (9) Spread of hours violations under New York Compensation Codes and Regulations Title 12, § 142-2.4; and (10) Wage Theft Prevention Act violations under New York Labor Law §§ 2, 190, and 651.  Compl. at ¶ 99–164.  Defendants filed an answer on May 27, 2020.  ECF No. 25 ("Answer").

On August 7, 2020, Plaintiffs filed the instant motion for conditional collective action certification under 29 U.S.C. § 216(b).  ECF No. 30 ("Mot.").  Plaintiffs seek conditional certification of the following collective action: "All current and former Field Engineers employed by EOS IT Management Solutions, Inc. and classified as exempt from overtime for at least one week during the three year period prior to the date the Court grants conditional certification to the present."  *Id.* at ii.  However, the Court notes that Plaintiffs' proposed collective action is formulated slightly differently in each of the three places that it is stated.  *See* Mot. at ii and 2, and ECF No. 30-10 at 1 ("Proposed Notice").  On August 28, 2020, Defendants filed an opposition.  ECF No. 31 ("Opp.").  On September 4, 2020, Defendants filed a reply.  ECF No. 33 ("Reply").

## II.    LEGAL STANDARD

Under the FLSA, an employee may bring a collective action on behalf of other "similarly situated" employees.  29 U.S.C. § 216(b).  In contrast to class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure, potential participants in a collective action under the FLSA must "opt in" to the suit by filing a written consent with the court in order to benefit from and be bound by a judgment.  *Centurioni v. City & Cty. of S.F.*, 2008 WL 295096, at *1 (N.D. Cal. Feb. 1, 2008); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  Employees who do not opt in are not bound by a judgment and may subsequently bring their own action.  *Centurioni*, 2008 WL 295096 at *1.

Determining whether a collective action is appropriate is within the discretion of the district court.  *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).  The plaintiff bears the burden to show that the plaintiff and the putative collective action participants

4

are "similarly situated." *Id.* The Ninth Circuit has clarified that "similarly situated" means "plaintiffs must be alike with regard to some material aspect of their litigation." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018). Thus, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

Although various approaches have been taken to determine whether plaintiffs are "similarly situated," courts in this circuit use a two-step approach. *See id.* at 1109–10 (favorably acknowledging the two-step approach); *Monplaisir v. Integrated Tech Group, LLC*, 2019 WL 3577162, at *2 (N.D. Cal. Aug. 6, 2019) ("Many district courts in our circuit have employed a two-step approach to collective actions."); *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 925 (D. Ariz. 2010) (Murguia, J.) ("[D]istrict courts within the Ninth Circuit generally follow the two-tiered or two-step approach for making a collective action determination.").

Under the two-step approach, the court first makes an initial "notice stage" determination of whether potential opt-in plaintiffs exist who are similarly situated to the representative plaintiffs, and thus whether a collective action should be certified for the purpose of sending notice of the action to potential collective action participants. *See, e.g.*, *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *Wellens v. Daiichi Sankyo, Inc.*, 2014 WL 2126877, at *1 (N.D. Cal. May 22, 2014) ("The question is essentially whether there are potentially similarly-situated class members who would benefit from receiving notice at this stage of the pendency of this action as to all defendants."). "In other words, at this preliminary stage, the focus of the inquiry 'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'" *Guillen v. Marshalls of MA, Inc.*, 750 F.Supp.2d 469, 475 (S.D.N.Y. 2010) (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)) (internal quotation marks omitted).

For conditional certification at the notice stage, the court requires little more than

5

substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102; *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (noting plaintiffs must make a "modest factual showing"); *Morton v. Valley Farm Transp., Inc.*, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-wide" conduct (internal quotation marks and citation omitted)). The standard for conditional certification at this stage is a "fairly lenient" one that typically results in conditional certification. *Wynn v. Nat'l Broadcasting Co.*, 234 F.Supp.2d 1067, 1082 (C.D. Cal. 2002).

Once discovery is complete, and the case is ready to be tried, the party opposing conditional collective action certification may move to decertify the collective action. *Leuthold*, 224 F.R.D. at 467. "[T]he Court then determines the propriety and scope of the collective action using a stricter standard." *Stanfield v. First NLC Financial Services, LLC*, 2006 WL 3190527, *2 (N.D. Cal. Nov. 1, 2006). At that point, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold*, 224 F.R.D. at 467. It is at this second stage that the Court makes a factual determination about whether the opt-in plaintiffs are actually similarly situated, by weighing such factors as: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Id.* (citing *Thiessen*, 267 F.3d at 1103).

## III. DISCUSSION

### A. The Notice-Stage Standard Applies Here

Plaintiffs argue and Defendants do not contest that the Court should apply the more lenient first-step standard in the analysis of the instant motion. The Court agrees. "Courts in this Circuit, including this Court, routinely reject defendants' requests to apply heightened scrutiny before the close of discovery and hold that the first-stage analysis applies until the close of discovery." *Coates v. Farmers Grp., Inc.*, 2015 WL 8477918, at *7 (N.D. Cal. Dec. 9, 2015) (quoting *Benedict*

6

United States District Court
Northern District of California

1    *v. Hewlett-Packard Co.*, 2014 WL 587135, at *7 (N.D. Cal. Feb. 13, 2014)).  Here, discovery has

2    not yet closed.  Accordingly, the Court finds that the more lenient first-step analysis applies to the

3    instant motion.

4         Plaintiffs seek conditional certification of a collective action composed off "all current and

5    former Field Engineers employed by Defendant EOS IT Management Solutions, Inc. and

6    classified as exempt from overtime for at least one week during the three year period prior to the

7    date the Court grants conditional certification to the present."  Mot. at ii.  Defendants argue that

8    Plaintiffs have failed to show that Plaintiffs are "similarly situated" to the putative collective

9    action that Plaintiffs seek to conditionally certify.

10         In order to demonstrate that Plaintiffs are "similarly situated" to other putative collective

11   action members, Plaintiffs must provide "substantial allegations, supported by declarations or

12   discovery, that 'the putative class members were together the victims of a single decision, policy,

13   or plan.'"  *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629 (E.D. Cal. 2009).  Taken

14   together, these allegations, declarations, and discovery must provide a "reasonable basis for

15   [Plaintiffs'] claim for class-wide" conduct.  *Coates*, 2015 WL 8477918 at *6.  Moreover, where

16   plaintiffs bring a claim that involves misclassification of FLSA-exempt status, courts require

17   plaintiffs to "provide some further allegations or evidence indicating that prospective class

18   members share similar job duties."  *Kress*, 263 F.R.D. at 629–30.  Finally, "[s]ome courts have

19   also emphasized whether plaintiffs can show that they and the putative class members fell under

20   similar compensation schemes."  *Wilson v. Maxim Healthcare Servs., Inc.*, 2014 WL 7340480, at

21   *2 (W.D. Wash. Dec. 22, 2014) (citations omitted).

22   **B.  Application of the Notice-Stage Standard to this Case**

23         Plaintiffs argue that they are similarly situated to putative collective action members

24   because both Plaintiffs and the putative collective action: "(1) share the same job title, (2) perform

25   similar work duties, and (3) were subject to the same company-wide exemption policies."  Reply

26   at 6.  In response, Defendants argue that Plaintiffs' motion should be denied because: (1) there is

27

28   Case No. 20-CV-01093-LHK
     ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     UNDER SECTION 216(B)

United States District Court
Northern District of California

7

1    not a "single 'Field Supervisor' job at IT Management Solutions"; (2) Plaintiffs are not similarly

2    situated to each other, let alone to other putative collective action members; and (3) beginning in

3    the summer of 2018, IT Management Solutions required all of its employees to enter into binding

4    arbitration agreements and a waiver of the right to bring collective actions.  Opp'n at 1–2.  The

5    Court first addresses whether Plaintiffs have shown that Plaintiffs and putative collective action

6    members were victims of a single common decision, policy, or plan.  The Court then considers

7    whether Plaintiffs have shown that Plaintiffs and putative collective action members shared

8    similar job duties.  Finally, the Court considers Defendants' further arguments in opposition to the

9    motion.

             **1.   Evidence of a Single Decision, Policy, or Plan**

10           Having considered the Plaintiffs' pleadings, declarations, and the record in this case, the

11   Court finds that Plaintiffs have met the required burden to show that Plaintiffs and putative

12   collective action members were victims of a single decision, policy, or plan.  Here, that burden is

13   met by "showing that Plaintiffs were subject to the same uniform classification of exempt status

14   under FLSA."  *Benedict*, 2014 WL 487135 at *8; *see also Kress*, 263 F.R.D at 629.  This burden is

15   not difficult to meet, and only a "handful of declarations may suffice."  *Rivera v. Saul Chevrolet,*

16   *Inc.*, 2017 WL 3267540, at *7 (N.D. Cal. July 31, 2017); *see also Gilbert v. Citigroup, Inc.*, 2009

17   WL 424320, at *2 (N.D. Cal. Feb. 18, 2009) (burden met based on five declarations); and *Escobar*

18   *v. Whiteside Constr. Corp.*, 2008 WL 3915715, at *3–4 (N.D. Cal. Aug. 21, 2008) (burden met

19   based on three declarations from plaintiffs).

20           Plaintiffs allege that "Defendants' policy of misclassifying the Field Engineers as exempt

21   from overtime pay was a single company-wide policy and plan that applied equally to all Class

22   Members."  Mot. at 5.  In support of this allegation, Plaintiffs have submitted seven declarations

23   from current and former Field Engineers, including both named Plaintiffs and opt-in Plaintiffs.

24   Plaintiffs have submitted declarations from the three named Plaintiffs.  ECF No. 30-1 ("Andy

25   Herrera Decl."); ECF No. 30-5 ("Gonzales Decl."); and ECF No. 30-7 ("Luis Herrera Decl.").

*United States District Court*
*Northern District of California*

8

1  Plaintiffs have also submitted declarations from four opt-in Plaintiffs.  ECF No. 30-2 ("Zelaya

2  Decl."); ECF No. 30-3 ("Maser Decl."); ECF No. 30-4 ("Santos Herrera Decl."); and ECF No. 30-

3  6 ("Barthelemy Decl.").

4       Defendants challenge the declarations of Juan Gonzales and Christopher Barthelemy on

5  the ground that they are former plaintiffs in this case who dismissed their claims prior to this

6  motion.  As such, Defendants argue, whether they are similarly situated to Plaintiffs and putative

7  collective action members is irrelevant.  Opp'n at 8.  Because the Court does not rely on these

8  declarations, and their relevance to this motion is in dispute, the Court does not consider them for

9  the purpose of deciding this motion.  The Court therefore relies on the five remaining declarations

10  to decide the instant motion.  The five relevant declarants are Andy Herrera, Luis Herrera, Alex

11  Zelaya, Robert Maser, and Santos Herrera.

12       Each declarant describes being "paid a salary by EOS."  *See, e.g.*, Andy Herrera Decl. at ¶

13  4.  Each declarant also states that they were "misclassified as exempt from overtime," and "when I

14  worked more than 40 hours, I was not paid any additional money for overtime pay."  *Id.* at ¶ 10–

15  11.  Thus, Plaintiffs have provided five declarations alleging that former salaried Field Engineers

16  were misclassified as exempt from overtime pay by Defendants.  Plaintiffs also point to

17  Defendants' Answer, where Defendants state that "Defendant [EOS IT Management Solutions]

18  admits that Plaintiffs were classified as exempt from overtime and paid consistent with that

19  classification."  Answer at 9.

20       Plaintiffs have also provided evidence that the policy of classifying Field Engineers as

21  exempt from overtime pay was not limited to named Plaintiffs and other opt-in Plaintiffs in this

22  case.  Each of the five declarations alleges that "I am aware that other Field Engineers were paid

23  the same as me and were also misclassified as exempt from overtime," and that "I have personal

24  knowledge that other Field Engineers were paid a salary without overtime pay."  *See, e.g.*, Andy

25  Herrera Decl. at ¶ 11.  Beyond these declarations, Plaintiffs point to Defendants' Answer, which

26  states that "[a]s to Defendant IT Management, admitted [sic] that Plaintiffs and those similarly

27

28

Case No. 20-CV-01093-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
UNDER SECTION 216(B)

United States District Court
Northern District of California

1    situated were classified as exempt from overtime."  Answer at 9.

2            On the basis of these allegations, Plaintiffs assert that Defendants have uniformly

3    misclassified the putative collective action members as exempt from overtime pay.  Moreover,

4    Plaintiffs argue, and the Court agrees, that Defendants do not challenge Plaintiffs' allegation that

5    Plaintiffs and the putative collective action members were subject to a uniform policy of

6    misclassification.  Having considered Plaintiffs' pleadings and declarations, the Court finds that

7    under the "fairly lenient" notice-stage standard, Plaintiffs have made the required "modest factual

8    showing" that Plaintiffs and putative collective action members were the victims of a single

9    decision, policy, or plan.  *Coates*, 2015 WL 8477918 at *10 (quoting *Myers*, 624 F.3d at 555).

10           **2.  Evidence of Similar Job Duties**

11           Having determined that Plaintiffs and putative collective action members were subject to a

12   single decision, policy, or plan, the Court now considers whether Plaintiffs have provided "further

13   allegations or evidence indicating that prospective class members share similar job duties."  *Kress*,

14   263 F.R.D. at 629.  "Some courts have also emphasized whether plaintiffs can show that they and

15   the putative class members fell under similar compensation schemes."  *Wilson*, 2014 WL 7340480

16   at *2; *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1071 (N.D. Cal.

17   2007).  Plaintiffs here assert that Plaintiffs and putative collective action members shared similar

18   job duties.  Mot. at 3–5.  In support of this assertion, Plaintiffs offer allegations in their complaint

19   and motion, five declarations from former employees, and several supporting documents.

20           Plaintiffs allege that as Field Engineers, "Plaintiffs and Class Members . . . conducted

21   installations of IT and audiovisual equipment."  Compl. at ¶ 54.  This work involved "install[ing]

22   70-inch television screens, set[ting] up large tables, install[ing] digital telephones, and mount[ing]

23   televisions on walls."  Mot. at 3.  Plaintiffs and purported collective action members also

24   conducted other physical labor, such as "carr[ying] cables to connect equipment" and

25   "measur[ing] the size of rooms in office buildings."  *Id.* at 4.  Once an installation was complete,

26   Plaintiffs and purported collective action members were also "required to clean offices as part of

27                                                10

28   Case No. 20-CV-01093-LHK
     ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     UNDER SECTION 216(B)

United States District Court
Northern District of California

1   their work," which "involved sweeping floors and picking up trash." *Id.*

2           The five declarations that Plaintiffs have submitted mirror closely this description of the

3   job duties alleged in the complaint and motion.  Each of the declarations states that the declarant

4   was employed as a "'Field Engineer' for EOS," and that their job title was also referred to by

5   Defendants as "Audio Visual & Telepresence Engineer" and "AV Field Technician" at different

6   points in time. *See, e.g.*, Andy Herrera Decl. at ¶ 3.  As a Field Engineer, the employee's "primary

7   duty was to perform manual labor tasks installing audio visual, teleconferencing, and IT

8   equipment in office buildings." *Id.* at ¶ 5.  The declarations go on to recount the various job duties

9   of a Field Engineer.  The declarations also each state that "I worked with other Field Engineers

10  and I know that my job duties were the same as the other Field Engineers." *Id.* at ¶ 10.

11          Plaintiffs also offer documents to support the assertion that Plaintiffs and putative

12  collective action members shared the same job duties.  First, Plaintiffs have submitted a copy of

13  the job description for the Field Engineer position that was produced in discovery by Defendants.

14  The exhibit is a job description for an "Audio Visual Field Engineer," which is also referred to

15  throughout the job description as a "Specialized Audio Visual & Telepresence Collaboration

16  Engineer."  ECF No. 30-8, Ex. 8-A at 1.  The document lists many of the same job duties

17  described by Plaintiffs in their declarations.  The location for the job is described as "United

18  States." *Id.*  Plaintiffs argue that this demonstrates that the Field Engineer role involved the same

19  job duties for Plaintiffs and putative collective action members across the country.  Plaintiffs also

20  submit an archived copy of the EOS IT Solutions website, which describes, in generic terms, the

21  services offered by the company, including "AV Installations" by "[o]ur certified installation

22  engineers."  ECF No. 30-8, Ex. 8-B at 2.

23          Plaintiffs also provide allegations and some evidence to show that "they and the putative

24  class members fell under similar compensation schemes." *Wilson*, 2014 WL 7340480 at *2.

25  Plaintiffs allege that Plaintiffs and putative collective action members "shared the same . . . pay

26  structure."  Mot. at 2.  Plaintiffs have provided some evidence to substantiate this allegation.  For

27
28  Case No. 20-CV-01093-LHK
    ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
    UNDER SECTION 216(B)

example, each of the five declarations from former Field Engineers states that "I was paid a salary by EOS" and "I am aware that other Field Engineers were paid the same as me and were also misclassified as exempt from overtime." *See, e.g.*, Andy Herrera Decl. at ¶ 3, 11.

Moreover, four of the five declarations have attached email exhibits that appear to be a job offer from EOS IT Solutions, which includes salary details. Opt-in Plaintiff Robert Maser's email exhibit states that he was offered "the full time position of a Jr. AV Field Engineer" with a salary of "$35,000 per year with an additional average reimbursement of $10,000 for per diem." ECF No. 30-3-A at 4. Opt-in Plaintiff Santos Herrera's email exhibit states that he was offered "the full time position of Telepresence Field Engineer" with a salary of "$35,000 per year with an additional $9,000 per diem." ECF No. 30-4-A at 4. Named Plaintiff Andy Herrera's email exhibit states that he was offered "the full time position of Junior Telepresence Field Engineer" with a salary of "$35,000 per year with an additional average reimbursement of $10,000 for per diem." ECF No. 30-1-A at 4. Finally, opt-in Plaintiff Alex Zelaya's email exhibit states that he was offered "the full time position of Junior Telepresence Field Engineer" with a salary of "$38,000 per year with an additional $10,000 per diem rate." ECF No. 30-2-A at 4.

Taken together, Plaintiffs argue that their pleadings, declarations, and attached exhibits are sufficient to meet the lenient notice-stage standard to show that Plaintiffs and the putative collective action shared similar job duties and a similar compensation structure. Mot. at 5.

Defendants argue that Plaintiffs have not met this relatively modest burden for two reasons. First, Defendants argue that Plaintiffs have offered only "generalized claims" and "general allegations." Opp'n at 4. Second, Defendants argue that although Plaintiffs seek to conditionally certify a conditional collective action of "Field Engineers," that job does not exist, and Defendants instead employ "at least 5 types of Telepresence Engineers, who perform various, yet distinctive engineering-related duties." *Id.* at 5.

First, the Court does not agree that Plaintiffs have offered only generalized claims and allegations. Plaintiffs may have offered only modest support for their allegations, but that is

United States District Court
Northern District of California

1    appropriate at the notice stage of a collective action, where only a "modest factual showing" is

2    necessary to meet the burden required to conditionally certify a collective action. *Coates*, 2015

3    WL 8477918 at *10; *see also Morton*, 2007 WL 1113999 at *2 (describing plaintiffs' burden as

4    "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-

5    wide" conduct). A modest burden is appropriate at this stage because discovery has not yet been

6    completed. Once discovery is complete, the party opposing conditional collective action

7    certification may move to decertify the collective action. *Leuthold*, 224 F.R.D. at 467. The Court

8    will then "determine[] the propriety and scope of the collective action using a stricter

9    standard." *Stanfield*, 2006 WL 3190527 at *2.

10        Moreover, Plaintiffs have provided more than generalized claims and allegations.

11   Plaintiffs have provided five declarations from former Field Engineers attesting to the nature of

12   their job duties and compensation. Although these declarations are repetitive and uniform, they

13   support Plaintiffs' allegations. District courts in this circuit have conditionally certified collective

14   actions based on five or fewer declarations in a number of cases. *See, e.g.*, *Saleh v. Valbin Corp.*,

15   297 F.Supp.3d 1025, 1038 (N.D. Cal. 2017) (finding burden met based on declarations from

16   plaintiff and two other individuals); *Gilbert*, 2009 WL 424320 at *2 (finding burden met based on

17   declarations from plaintiff and four other individuals); and *Escobar*, 2008 WL 3915715 at *3–4

18   (finding burden met based on declarations from three plaintiffs). Furthermore, Plaintiffs have

19   offered documents that corroborate these declarations, including job offer letters with salary

20   details and a job description provided by Defendants that outlines the duties conducted by Field

21   Engineers. At this initial stage, the Court finds that Plaintiffs' pleadings and supporting evidence

22   are sufficient to meet the "lenient" burden required to demonstrate that Plaintiffs and putative

23   collective action members shared similar job duties and a similar compensation scheme. *See*

24   *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) (noting that the standard

25   for conditional certification at the notice stage is "lenient").

26        Defendants next argue that Plaintiffs have not met the required burden to show that

27

28   Case No. 20-CV-01093-LHK
     ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     UNDER SECTION 216(B)

United States District Court
Northern District of California

13

1    Plaintiffs and putative collective action members shared similar job duties because Defendants

2    actually employ five different kinds of Telepresence Engineers, each of whom "perform various,

3    yet distinctive engineering-related duties." *Id.* at 5.  To substantiate this argument, Defendants

4    submit a declaration from Patrick Downey, who is employed as a Global Account Manager at

5    EOS IT Management Solutions.  *See* ECF No. 31-1 ("Downey Decl.").  The Downey Declaration

6    states that "IT Management Solutions does not employ only one type of Telepresence Engineer.

7    Instead, there are five different categories of employees that perform various, yet distinctive

8    engineering-related duties." *Id.* at ¶ 6.  Furthermore, the declaration states that of the named

9    Plaintiffs, "most, but not all, were considered 'Intermediate Lead' or 'Lead' Telepresence

10   Engineers by the Company, and held themselves out to third parties as 'Leads.'" *Id.* at ¶ 7.

11   Defendants therefore argue that "Plaintiffs improperly seek to merge multiple groups of engineers

12   who cannot logically be similarly situated."  Opp'n at 6.

13          Defendants' argument lacks merit for two reasons.  First, Defendants have failed to include

14   any company documents that outline the job titles in the company or explain the various duties of

15   the Telepresence Engineers.  Instead, the only evidence the Court has before it is the job

16   description produced in discovery by Defendants and submitted by Plaintiffs.  As such, this

17   dispute regarding the nature of the Field Engineer job title becomes a battle of declarations

18   between the two parties.  Courts in this circuit have routinely granted conditional certification

19   even where Defendants produce competing declarations challenging Plaintiffs' allegations.  This is

20   because competing declarations at this stage create a "he-said-she-said situation," and therefore

21   although "[i]t may be true that the [defendants'] evidence will later negate [the plaintiffs'] claims,

22   that should not bar conditional certification at the first stage.  *Escobar*, 2008 WL 3915715 at *4;

23   *see also Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 838 (N.D. Cal. 2010) (finding that the

24   "fact that a defendant submits competing declarations will not as a general rule preclude

25   conditional certification.").

26          Second, even if the Court were to conclude that Plaintiffs and putative collective action

27                                                         14

28   Case No. 20-CV-01093-LHK
     ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
     UNDER SECTION 216(B)

United States District Court
Northern District of California

members held multiple job titles, that fact alone would not bar conditional certification because "courts often conditionally certify collective actions that include multiple job types and titles." *Saleh*, 297 F.Supp.3d at 1034 (conditionally certifying collective action that comprised three job descriptions); *see also Coates*, 2015 WL 8477918 at *13 (conditionally certifying collective action that included eleven job titles); and *Wellens*, 2014 2126877 at *6 (conditionally certifying collective action that included six job titles).

The dispositive question is therefore not whether there are multiple job titles, but whether the various jobs were similarly situated, such that Defendants' policies applied similarly to each of the putative collective action members.  Here, Defendants have not sufficiently argued that the difference in job titles resulted in a different application of Defendants' policies regarding classification of exempt status.  *See Saleh*, 297 F.Supp.3d at 1034 (noting that difference in job classification did not necessarily result in different application of defendants' policies). Defendants do allege that there is a distinction between "Junior Field Engineers" and "Lead engineers," and that "Leads" are responsible for tasks such as managing their assigned team, supervising team members, and preparing job reports.  Opp'n at 5.  Junior Field Engineers, by contrast, allegedly have less experience and "more limited decision-making responsibilities." *Id.* Crucially, however, Defendants fail to demonstrate why these differences sufficiently undermine Plaintiffs' argument that Plaintiffs and putative collective action members shared similar job duties and compensation structures.  Defendants do not deny that both Junior and Lead Field Engineers share the core job function of installing IT equipment at client offices, and that the principle elements of the job are a set of manual tasks associated with the installation process.  Nor do Defendants deny that Junior and Lead Field Engineers were compensated similarly.

Thus, to the extent that some percentage of the putative collective action were employed as "Lead" Field Engineers rather than "Junior" Field Engineers, this distinction is not sufficient to defeat conditional certification at the notice stage, given the overwhelming similarity in job duties that the two roles share.  *See Santiago v. Amdocs, Inc.*, 2011 WL 6372348, at *5 (N.D. Cal. Dec.

15

19, 2011) (finding burden met to conditionally certify collective action even where some declarant employees stated that they supervised or managed other employees half the time or less, whereas other declarants stated that they did not manage other employees at all).  The Court therefore concludes that the fact that Plaintiffs and putative collective action members may have had different job titles does not defeat conditional certification at this stage.

### C. Defendants' Further Arguments in Opposition to Conditional Certification

Defendants offer three further arguments in opposition to Plaintiffs' motion to conditionally certify a collective action.  First, Defendants challenge the declarations and exhibits that Plaintiffs have offered in support of their motion.  Second, Defendants argue that written employment agreements signed by some employees mean that those employees are not "similarly situated" to Plaintiffs and other putative collective action members.  Finally, Defendants challenge the nationwide scope of the collective action.

First, Defendants allege various deficiencies with Plaintiffs' declarations and exhibits. Defendants argue that Plaintiffs' declarations contain insufficient detail, are largely identical, and cannot speak to the current practices of "Field Engineers" at IT Management Solutions.  Opp'n at 7.  The Court has already largely addressed these alleged deficiencies in the context of whether Plaintiffs have provided sufficient evidence to meet their burden to conditionally certify a collective action at the notice stage.  The Court therefore merely restates that at the notice stage, the standard for conditional certification is "lenient," and the Court's task is to evaluate whether Plaintiffs have provided "some factual basis beyond the mere averments in their complaint for the class allegations."  *Monplaisir*, 2019 WL 3577162 at *2 (quoting *Adams*, 242 F.R.D. at 535). Plaintiffs have met that lenient standard here.

Second, Defendants argue that Plaintiffs are not "similarly situated" to putative collective action members who were hired by IT Management Solutions beginning in the summer of 2018, because those employees entered into written employment agreements that bind the parties to arbitrate the claims at issue in this case.  Opp'n at 9.  These employment agreements, Defendants

Case No. 20-CV-01093-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION UNDER SECTION 216(B)

allege, are governed by Texas law and apply to all "Field Engineers" employed since September 2018. Defendants therefore argue that if the Court conditionally certifies a collective action, the Court should exclude all Field Engineers who were employed after September 2018, because those individuals cannot ultimately participate in this case. Opp'n at 10.

Although it may be true that these individuals will ultimately be unable to participate in this case, the Court finds that it is not appropriate to exclude potential opt-in members from the conditionally certified collective action at the notice stage. This is because the focus of the Court's inquiry at the notice stage is on whether there is a common policy or plan that connects the claims of the putative collective action. "[A]n arbitration agreement goes to Defendants' defenses, not the common policy," and therefore "the enforceability of the arbitration agreements is better reserved for the step two determination, not step one." *Conde v. Open Door Marketing, LLC*, 223 F.Supp.3d 949, 969 (N.D. Cal. 2017). For this reason, courts in this district routinely conditionally certify collective actions despite defendants' assertion that arbitration agreements bar members of the putative collective action from participating in the case. *See id.* at 968–9 (conditionally certifying collective action despite Defendants' argument that some members were barred by arbitration agreements); *Deatrick v. Securitas Security Services USA, Inc.*, 2014 WL. 5358723, at *4 (N.D. Cal. Oct. 20, 2014) (same); and *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 424 (N.D. Cal. 2015) (same).

In response, Defendants point the Court to the Fifth Circuit's recent decision in *In re JPMorgan Chase & Co.*, in which the court held that district courts should refrain from sending notice of a collective action to potential opt-in plaintiffs barred by valid arbitration agreements. 916 F.3d 494, 502 (5th Cir. 2019). However, the Ninth Circuit has not yet followed the Fifth Circuit's decision in *In re JPMorgan Chase & Co.*, and district courts in this circuit have continued to send notice of a pending collective action to potential members who may ultimately be unable to join the action because of a valid arbitration agreement. *See, e.g.*, *Monplaisir*, 2019 WL 3577162 at *3 (declining to follow *In re JPMorgan Chase & Co.* and leaving the question of

17

binding arbitration agreements to step two); *Gonzales v. Diamond Resorts Int'l Mktg., Inc.*, 2019 WL 3430770, at \*5 (D. Nev. July 29, 2019) (leaving the enforceability of arbitration agreements to step two).  Accordingly, the Court finds that Defendants' assertion that some members of the putative collective action may ultimately be barred from joining this case by arbitration agreements does not prevent the Court from conditionally certifying a collective action at the notice stage and sending notice to all putative collective action members.

Lastly, Defendants argue that if the Court does conditionally certify a collective action, the collective action should be limited to the five states in which named Plaintiffs worked (California, Texas, New York, New Mexico, and Pennsylvania), rather than a nationwide collective action. Opp'n at 6 fn. 6.  To support this argument, Defendants point to two district court cases from the Eastern District of New York, in which the court limited the scope of the proposed nationwide collective action after finding that Plaintiffs had provided insufficient support.  *See Meo v. Lane Bryant, Inc.*, 2019 WL 5157024, at \*9–10 (E.D.N.Y. Sept. 30, 2019) (finding a sufficient basis to conditionally certify a collective action with respect to six states, but not as to the full 47 states where defendants' stores were located); *Ahmed v. T.J. Maxx Corp.*, 2013 WL 2649544, at \*13 (E.D.N.Y. June 8, 2013) (conditional certification of a nationwide collective action, including all 4000 of defendants' stores, was not warranted on the basis of deposition testimony and affidavits from a small number of employees in New York, Connecticut, and Arkansas).

In support of a nationwide collective action, Plaintiffs have provided declarations from former Field Engineers who worked in five different states, which are located across the country. Plaintiffs have also submitted the job description for "Audio Visual Field Engineer" that Defendants produced in discovery, which states that the job location is "United States."  This evidence, although limited, is similar to what other courts in this district have required at the notice stage to conditionally certify a nationwide collective action.  For example, in *Monplaisir v. Integrated Tech Group*, the court found that nine declarations from technicians working in various states were sufficient "to indicate a nationwide common policy or practice."  2019 WL 3577162 at

18

*3; *see also Gilbert*, 2009 WL 424320 at *5 (finding that five declarations from employees in California, in addition to a supporting document, were sufficient to conditionally certify a nationwide collective action). Accordingly, the Court finds that it would not be appropriate to limit the collective action to only the five states in which Plaintiffs have worked.

## IV.   PROPOSED NOTICE AND OPT-IN FORM

The Supreme Court has held that employees need to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate" in the collective action. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Here, Plaintiffs have provided a copy of their proposed Notice and opt-in form. ECF No. 30-10. Defendants challenge several aspects of the proposed Notice, which the Court addresses in turn.

First, Defendants argue that they should not be required to produce birthdates for collective action members. Opp'n at 12. Plaintiffs reply that without birthdates, it will be impossible to distinguish between individuals with the same name. Reply at 21. Courts often require that Defendants provide private information to allow individuals with the same name to be distinguished from each other. *See, e.g.*, *Coates*, 2015 WL 8477918 at *14 (requiring defendants to produce social security numbers to Plaintiffs' counsel). The Court therefore orders Defendants to produce birthdates for collective action members.

Second, Defendants argue that Plaintiffs do not need "all" telephone numbers and email addresses the company may have on file, just the "last known" email address and telephone number. Opp'n at 12. Plaintiffs reply that because collective action members may have changed telephone numbers and email addresses over time, more information is helpful to effectuate notice. Reply at 21. The Court agrees with Plaintiffs. It is not unusual for courts to require "all" telephone numbers and email addresses. *See, e.g.*, *Benedict*, 2014 WL 587135 at *15 (requiring production of "all known" email addresses and telephone numbers).

Third, Plaintiffs and Defendants now agree that Defendants shall have 15 days to provide

Case No. 20-CV-01093-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION UNDER SECTION 216(B)

United States District Court
Northern District of California

1    the required information to Plaintiffs' counsel.  Reply at 22.

2           Forth, Defendants object to Plaintiffs' request to hire a third-party administration company

3    to issue the notice.  Opp'n at 12.  Plaintiffs argue in reply that a third-party administrator is

4    necessary because "[t]he class list may be so numerous that a third party must be hired to assist

5    Plaintiffs' Counsel to ensure that the notice is distributed in a timely fashion."  Reply at 22.

6    Courts in this district sometimes appoint a third-party administrator where there are privacy

7    concerns raised by the parties, or where some other compelling reason justifies the extra expense.

8    *See Weeks v. Matrix Absence Management Inc.*, 2020 WL 6081500, at *4 (D. Ariz. Oct. 15, 2020)

9    (declining to appoint a third-party administrator where there were no security concerns, or other

10   compelling reasons, to do so); *Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1207 (N.D.

11   Cal. 2013) (declining to appoint a requested third-party administrator because there was no

12   persuasive reason "that plaintiffs' counsel will violate their professional responsibilities.").  Here,

13   Plaintiffs have not offered a compelling reason why a third-party administrator is necessary.  The

14   Court therefore declines Plaintiffs' request.

15          Defendants next challenge the language in the proposed Notice that reads: "Your decision

16   not to join this case will not affect your right to bring a similar case on your own at a future time.

17   However, claims under the Fair Labor Standards Act must be brought within two (2) years of the

18   date the claim accrues, unless the employer's violation of the law was 'willful,' in which case the

19   claim must be brought within three (3) years."  ECF No. 30-10 at 2.  Defendants argue that this

20   language "purports to provide legal advice" that is "both unnecessary and superfluous."  Opp'n at

21   12.  Plaintiffs argue that this language "is not legal advice, but a statement of fact."  The Court

22   agrees with Plaintiffs that the challenged language does not constitute legal advice.

23          Finally, although Defendants do not challenge Plaintiffs' adoption of a three-year period

24   for their collective action notice, the Court addresses that issue briefly.  FLSA claims for unpaid

25   overtime compensation are generally subject to a two-year statute of limitations.  *See* 29 U.S.C. §

26   255(a).  However, "a cause of action arising out of a willful violation may be commenced within

27

28

20

three years after the cause of action accrued." *Id.*  In the context of the FLSA, willful means "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988). Moreover, when plaintiffs allege willfulness on the part of Defendants, "[c]ourts routinely approve a three-year notice period." *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F.Supp.2d 317, 331 (S.D.N.Y. 2010).

Plaintiffs have plausibly alleged willfulness under the lenient standard applied at the notice stage. *See Saleh*, 297 F.Supp.3d at 1035 (explaining that courts apply a more exacting standard of review at the second stage, and the collective action period can always be limited subsequently). Because Defendants do not challenge the three-year notice period, and the Plaintiffs have plausibly alleged willfulness on the part of Defendants, the three-year notice period is appropriate at this stage.  However, the three-year notice period corresponds to the date the present action was filed, not the date that the Court decides the instant motion.  Because the instant complaint was filed on February 11, 2020, the Court adopts February 11, 2017 as the relevant date for the collective action notice period.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for conditional FLSA collective action certification.  The Court conditionally CERTIFIES the following collective action: "All current and former Field Engineers employed by Defendant EOS IT Management Solutions, Inc. and classified as exempt from overtime for at least one week between February 11, 2017 and the present."

The Court orders Defendants to release, within fifteen days of the date of this Order, in Microsoft excel or comparable form, a collective action list to Plaintiffs' counsel, including the names, dates of employment, all known addresses, all known phone numbers, dates of birth, and all known email addresses.  Plaintiffs shall incorporate the aforementioned change into their proposed Notice and will send the Notice and opt-in form to all individuals on the collective

21

Case No. 20-CV-01093-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION
UNDER SECTION 216(B)

United States District Court
Northern District of California

action list via first-class mail, email, and text message within seven days of receipt by Plaintiffs of the contact information from Defendants.  Potential opt-ins shall be permitted to file consent to join forms until 60 days after the mailing of the Notice.  A consent to join form may be completed online, so long as the online form provides a means by which the potential plaintiff signifies his or her assent to the statements listed on the form comparable to a signature, such as by checking a box on a web page.  Plaintiffs shall bear the full cost of the Notice and opt-in forms.

**IT IS SO ORDERED.**

Dated: December 14, 2020

_____
LUCY H. KOH
United States District Judge

Case No. 20-CV-01093-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION UNDER SECTION 216(B)