# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release ("Agreement") is entered into by and between Defendants EOS IT MANAGEMENT SOLUTIONS INC. and EOS UNIFIED SOLUTIONS, INC. (collectively "Defendants") and Plaintiffs ANDY HERRERA and LUIS HERRERA who brought this lawsuit on behalf of themselves and all 32 collective action class members who affirmatively joined this case (collectively the named representatives and the opt-in plaintiffs are referred to as "Plaintiffs"), (Defendants and Plaintiffs are collectively referred to as the "Parties"). The Agreement is effective on the Effective Date of this Agreement, which is the date that the Court grants approval of this Agreement.

## RECITALS

1. WHEREAS, Defendants employed Luis Herrera as an Audio Visual Field Engineer, and later as a AV/VC Lead Engineer, between September 2016 and May 2018. Defendants employed Andy Herrera as an Audio Visual Field Engineer between January 2017 and September 2018.

2. WHEREAS, on February 11, 2020, Plaintiffs Andy Herrera, Luis Herrera, and Juan Gonzalez Ruiz filed their original complaint in the United States District Court for the North District of California, case number 5:20-cv-01093 ("Action") as (1) a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.* for overtime violations and misclassification, (2) a putative California class action alleging overtime violations, meal and rest period violations, wage statement violations, waiting time penalties, failure to reimburse necessary expenses, and unfair competition, and (3) a putative New York class action alleging overtime violations, spread hours violations and wage theft.

3. WHEREAS, Plaintiffs alleged that as field engineers, they and other field engineer employees' daily duties consisted of driving to different customer locations and installing a variety of teleconferencing equipment. Plaintiffs claimed they and other field engineer employees regularly worked more than 40 hours per week, and commonly up to 60 hours per week. As to the FLSA overtime claim, Plaintiffs alleged defendants denied these employees pay at the rate of one and one–half the regular rate of pay when they worked more than 40 hours in a work week. Further, Plaintiffs alleged they were jointly employed by EOS IT Management Solutions Inc. and EOS Unified Solutions, Inc. during the relevant time period.

4. WHEREAS, six opt–in plaintiffs joined the case within a few days of the original filing. Named Plaintiff Juan Gonzalez Ruiz and three of the original opt–in Plaintiffs had arbitration agreements with Defendants and Plaintiffs' counsel agreed to dismiss their claims without prejudice on May 18, 2020 to pursue their claims in arbitration, which have been subsequently settled as well.

5. WHEREAS, on May 18, 2020, Defendants filed their answer to the Complaint. Defendants contend the Plaintiffs were properly classified as exempt employees not entitled to overtime pay in the first place because Plaintiffs qualify for the professional exemption for computer–related occupations under Section 13(a)(1) of the FLSA. Further, Defendants generally deny and dispute Plaintiffs' claims in all respects, including Plaintiffs' alleged misclassified, alleged unpaid overtime incurred if Plaintiffs were misclassified, the method of calculating the alleged unpaid overtime, and all other claims, allegations, and requests for damages. Additionally, Defendants deny they jointly employed any of the Plaintiffs during the relevant time period.

6. WHEREAS, on May 29, 2020, the Court referred the Parties to private mediation. On August 24, 2020, Parties attended a full–day mediation. However, Parties were unable to successfully resolve their claims.

7. WHEREAS, on September 25, 2020, the Court notified the Parties that it intended to order another mediation session, and on March 16, 2021, the Court granted the Parties' motion to extend the deadline to complete private mediation to May 21, 2021.

8. WHEREAS, on December 14, 2020, the Court granted Plaintiffs' Motion for Conditional Collective Action Certification under 29 U.S.C. section 216(b) and authorized notice to be sent to all of Defendants' current and former Field Engineers classified as exempt from overtime for at least one week between February 11, 2017 and the time of the Court's order. The Court order also allowed potential opt–in plaintiffs to file their consent to join forms on or before 60 days after the mailing of the Notice. On January 5, 2021, Plaintiffs mailed the Court-authorized notice to the collective action members.

9. WHEREAS, on March 6, 2021, the 60–day period for opt–in plaintiffs to file their consent to join forms closed. The size of the collective action includes 32 members—including the two remaining named Plaintiffs. The consents filed by the 30 opt-in plaintiffs stated, in relevant part: "I authorize the named Plaintiffs to prosecute the above referenced matter in my name, and on my behalf, and designated the named Plaintiffs and Plaintiffs' Counsel to make decisions on my behalf concerning the litigation, including negotiating a resolution on my claims and I understand I will be bound by such decisions."

10. WHEREAS, on May 11, 2021, the Parties attended a full day, private mediation with the Honorable Ronald M. Sabraw (Ret.). While Parties made significant progress, they were unable to fully resolve this matter on the day of the mediation.

11. WHEREAS, on May 17, 2021, the Parties agreed to a mediator's proposal, and agreed to fully resolve this matter.

12. WHEREAS, the Parties have undertaken significant investigation, and conducted formal and informal discovery during the prosecution of this Action; engaged in arms–length negotiations in an attempt to resolve their differences and evaluate the data relevant to settlement calculations, and throughout these negotiations all Parties were, and continue to be, represented by counsel experienced in wage and employment collective actions.

13. WHEREAS, Counsel for all Parties have thoroughly investigated the facts relating to the claims alleged in the operative complaint and have made a thorough study of the legal principles applicable to the claims asserted against Defendants.

14. WHEREAS, *bona fide* disputes and controversies exist among Plaintiffs and Defendants, as to liability under the federal Fair Labor Standards Act ("FLSA"), California and New York wage and hour law, and any other wage and hour law and/or regulation, including but not limited to disputes concerning Plaintiffs' classification as exempt employees, the amount of overtime pay due (if any), statutory penalties, restitution and/or reimbursement of expenses, the availability of liquidated damages, pre-judgment interest, and whether any alleged violations constitute willful violations of the FLSA and/or any applicable state law, local law and/or regulation. In resolving this case, the Parties have considered the various risks associated with their respective positions on each issue, including the time value of money and attorneys' fees and costs. As the outcome of this litigation is far from certain, the Parties have eliminated significant litigation risks by agreeing to resolve Plaintiffs' claims as provided in this Agreement.

15. WHEREAS, the potential recovery at trial, if any, remains unknown, based on their investigation and evaluation of this case, Plaintiffs' Counsel have concluded that the settlement is fair, reasonable, and adequate in light of all known facts and circumstances, including the defenses asserted by Defendants, potential adverse findings regarding liability, and numerous potential appellate issues.

16. WHEREAS, as a result of their negotiations, the Parties wish to settle the Action and resolve and release all disputes and claims actually raised or that could have been raised in the Action, whether known or unknown, against the Defendants.

17. WHEREAS, each of the Parties has entered into this Agreement with the intention to buy their mutual peace, and avoid further disputes and litigation with the attendant inconvenience, expenses, uncertainties, and contingencies. Nothing in this Agreement shall be construed as or deemed to be an admission by any Party of any liability, culpability, negligence, or wrongdoing toward any other Party, or any other person, and the Parties specifically disclaim any liability, culpability, negligence, or wrongdoing toward the each other or any other person. Nothing herein shall constitute any admission by Defendant of wrongdoing or liability, or of the truth of any factual allegations in the Action.

18. NOW THEREFORE, in consideration for the mutual promises and undertakings of the Parties as set forth below, the Parties enter into this Agreement and agree as follows:

**TERMS**

19. **Gross Settlement Amount.** Subject to the Court's approval of this Agreement, Defendants shall pay a total of $500,000 to resolve Plaintiffs' claims for unpaid wages, damages, attorneys' fees, and costs in the Action. Defendants will issue the payment to the settlement administrator, Phoenix Settlement Administrators, no later than 35 calendar days from entry of the judgment confirming approval of this Agreement (unless appealed), and the settlement administrator shall hold the forgoing funds in an interest–bearing Qualified Settlement Fund ("QSF") until the funds are distributed according to the terms of this Agreement. In the event the Court's Approval Order as defined below is appealed, the payment of the Gross Settlement Amount will be 31 calendar days from dismissal of the appeal or affirmance of the Approval Order and no further appellate review is available.  Although the Parties dispute whether the Defendants have liability for Plaintiffs' claims, for purposes of this Agreement, the Gross Settlement Amount represents the agreed upon amount for all overtime allegedly owed to Plaintiffs, all amounts allegedly owed for liquidated damages arising during an alleged three–year statute of limitations for recovery relief, and any and all other damages and relief recoverable in the Action, including attorneys' fees and costs, for the full liability period alleged in the Action. The Gross Settlement Amount includes only (all subject to Court approval): (1) Plaintiffs' Attorney fees and costs; (2) Service and Release Payments to  Andy Herrera, Luis Herrera, and Santos Herrera; (3) administration costs; and (4) Net Settlement Amount to be distributed as individual settlement payments to the Plaintiffs, all as set forth below. Defendants are under no obligation to pay any amount under this Agreement other than the Gross Settlement Amount and any employer-side payroll taxes for the individual settlement payments to the 32 collective action class members, as set forth in paragraph 19.d. and 19.e. The Gross Settlement Amount shall be distributed as described below, or as otherwise ordered by the Court, within 10 days of the funding of the Gross Settlement Amount by Defendants.

    a. **Attorney Fees and Costs.** Plaintiffs' counsel shall make an application to the Court for an award of attorney fees and costs, to be paid out of the Gross Settlement Amount. Plaintiffs' Counsel seeks a 25% fee of $125,000 and an additional amount of $14,259.23 in costs.  Defendants will not oppose or object to Plaintiffs' Counsels' application for reasonable attorneys' fees plus all documented and reasonable litigation costs and expenses. In the event the Court does not approve an award of attorneys' fees equal to the requested amount, or the Court alters the payment methodology described herein, Plaintiffs' Counsel agrees not to seek additional review of the Court's decision regarding attorneys' fees, and this Settlement will be enforceable. Any reductions by the Court of Plaintiffs' Counsel's request for attorneys' fees or costs shall revert to the Net

Settlement Amount. The settlement administrator will issue an IRS Form 1099 in relation to this payment. Except as provided herein, each party will bear its own attorney fees and costs.

b. **Service Payments.** Representative Plaintiffs Andy Herrera and Luis Herrera shall receive an additional service award in the amount of $1,000.00 each from the Gross Settlement Amount for their time and efforts in bringing the Action, assisting with the investigation, responding to written discovery, consulting with Class Counsel.

c. **General Release Payments:** Plaintiffs Andy Herrera and Luis Herrera and opt-in Plaintiff Santos Herrera shall also receive release payments in the amount of $10,000 each for providing a broader release—including individual claims separate and apart from the claims at issue in this Action—and other covenants they will be providing to Defendant. The settlement administrator shall issue checks for $11,000.00 each made payable to Andy Herrera, Luis Herrera, and $10,000 for Santos Herrera. The settlement administrator will issue an IRS Form 1099 to Andy Herrera, Luis Herrera, and Santos Herrera for these payments.

d. **Administration Costs.** All costs and expenses arising from the administration of the Gross Settlement Amount by a third party settlement administrator, including, but not limited to, skip–tracing/locating Plaintiffs, and calculating, administering, and distributing the Net Settlement Amount to the Plaintiffs and related tax forms, and collecting and issuing payment for the employer's portion of applicable taxes, shall be paid from the Gross Settlement Amount, and shall not exceed $2,000.00.

e. **Net Settlement Amount.** The Net Settlement Amount shall be the Gross Settlement Amount, less the attorney fees and costs awarded to Plaintiffs' counsel, as set forth in paragraph 19(a), the Service and Release Payments to Andy Herrera, Luis Herrera, and Santos Herrera, as set forth in paragraphs 19(b) and 19(c), and the amount approved for the administrative costs, as set forth in paragraph 19(d). The Net Settlement Amount will be distributed on a pro rata basis based upon the number of weeks worked by each individual Plaintiff as follows: (1) in the four year period if the Plaintiff worked in California, (2) in the six year period if the Plaintiff worked in New York, and (3) in the three–year timeframe, prior to when each respective Plaintiff joined the action to the date of the execution of this Agreement, and (4) the amount of the salary paid to each Plaintiff. The allocation to each Plaintiff is set forth in Exhibit "A."

f. **Allocation of Net Settlement Amount.** The allocation of the individual settlement payments to each Plaintiff shall be one-third (33.34%) to wages, which is subject to applicable employment tax withholdings; one-third (33.33%) to

liquidated damages, and one-third (33.33 %) to interest, which are not subject to applicable tax withholdings. Each Plaintiff will be issued a W-2 for the amount allocated as wages, and an IRS Form 1099 for the amount allocated as liquidated damages and interest.

20. **Uncashed Checks.** This is a non–reversionary settlement. If a Plaintiff's check is not cashed within 180 calendar days, the check will be void and a stop payment order may be placed on the check. In such event, the Agreement, and all releases set forth herein, and judgment rendered in connection with it nevertheless will be binding upon the Plaintiff in the event the Plaintiff fails to case his or her settlement check. Any uncashed funds shall be deposited in the unclaimed funds registry in the State of California for the benefit of the individual Plaintiff.

21. **Tax Treatment and Tax Indemnification.** Plaintiffs assume any tax obligations or consequences which may arise from this Agreement. Plaintiffs release any and all claims they have or may have against Defendants for any claims, demands, deficiencies, levies, assessments, executions, judgments, penalties, taxes, indemnification, and any other recoveries related to any payments made under this Agreement or any compensation provided at any time by Defendants. If any state or federal taxing authority contacts, investigates, or pursues any action against any of Plaintiffs for their individual share of taxes related to any payments made under this Agreements, or any compensation provided at any time by Defendants, each Plaintiff shall be responsible for their own defense of and payment for any claim of unpaid taxes, interest, or penalties brought by any state or federal taxing authority for the Plaintiff's share of any state or federal tax obligation. If a Plaintiff has questions about any liability to any state or federal taxing authority, they shall contact the settlement administrator. The Plaintiffs shall not contact Defendants, any of the Released Parties, or Defense Counsel.

22. **Defendants' Denials of Wrongdoing and Liability.** Defendants have denied, and continue to deny, all of the allegations, claims, and contentions alleged by Plaintiffs in the Action. Defendants have expressly denied, and continue to deny, all charges of wrongdoing and any liability whatsoever against them arising out of any of the conduct, statements, acts or omissions alleged in the Action. Defendants contend that they complied with state and federal wage and hour laws, and have dealt legally and fairly with Plaintiffs, individually and collectively. Defendants further deny that, for any purpose other than settling this Action, these claims are appropriate for class or collective treatment. Nevertheless, Defendants have concluded that further proceedings in the Action would be protracted and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement in order to dispose of burdensome and protracted litigation, to permit the operation of Defendants' business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in the Action, and for Parties to buy their respective peace. Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as the Action. Defendants have, therefore,

determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement.

23. **Court Approval of Settlement.** Within a reasonable period of time within the execution of this Agreement, Plaintiffs will seek the Court's approval of the terms of this Agreement by filing a joint motion for approval of proposed settlement agreement. The filing shall include a Proposed Order Approving the Settlement Agreement and Judgment ("Approval Order") that is consistent with the terms of this Agreement and acceptable to counsel for the Parties, approving the settlement and dismissing this Action with prejudice. If the Court does not enter an order approving this Agreement, or the Court does so only with material modifications to the Agreement, or if the Approval Order is vacated or reversed by an appellate court, this Agreement shall become null and void. However, the Parties agree to negotiate in good faith to try to enact an agreement that meets the Court's approval.  If unable to do so, this Agreement becomes null and void, the Parties shall return to the position they were in prior to the execution of this Agreement.

24. **Dismissal of Pending Action**. Plaintiffs agree to dismiss with prejudice their claims in the Action, and to withdraw or dismiss any other comp1aint, claim, grievance, or charge that he or she has filed against Released Parties relating to or arising from the claims raised in this Action and occurring up to the Effective Date of this Agreement. This Agreement extends to any such complaint, claim, grievance, or charge relating to or arising from the claims raised in this Action filed in any state or federal court, with any administrative body, agency, board, commission, or other entity whatsoever.  The proposed Approval Order shall include a provision for the dismissal of the Action with prejudice.

25. **Released Claims**. "Released Claims" shall mean any and all past and present wage and hour claims, debts, liabilities, demands, obligations, disputes, guarantees, suits, costs, losses, expenses, attorney's fees, damages, and causes of action, whether known or unknown, which relate to or arise out of the claims alleged in the Action or that could have been alleged, based on or arising out of the facts alleged in the Complaint filed by Plaintiffs, on their behalf and on behalf of all others similarly situated in this Action, including but not limited to misclassification and failure to pay overtime wages, liquidated damages, unpaid wages, premium payments, and/or penalties of any nature whatsoever, and attorneys' fees and costs based on the foregoing.

26. **Released Parties**. "Released Parties" shall mean EOS IT Management Solutions Inc. and EOS Unified Solutions, Inc., and all of their current and former owners, officers, directors, managers, supervisors, members, employees, operators, agents, representatives, subsidiaries, parents, affiliates or related companies, predecessors, successors, joint venturers, co–owners, joint employers, payroll providers, service providers, attorneys, insurers,

shareholders, stockholders, partners, trustees, franchisors, franchisees, independent contractors, benefit plan fiduciaries, investors, legal representatives, assigns, assignees, and reinsurers.

27. **Releases and Covenants by Plaintiffs Andy Herrera, Luis Herrera, and Santos Herrera.** Plaintiffs Andy Herrera, Luis Herrera, and Santos Herrera, on behalf of themselves and their respective dependents, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, agents, trustees, conservators, guardians shall and do hereby forever release, discharge and agree to hold harmless the Released Parties from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, which they may now have arising out of or in any way connected with their employment with Defendants including, the Released Claims, claims that were asserted or could have been asserted in the Complaint, and any and all transactions, occurrences, or matters between them, individually and/or collectively, and the Released Parties occurring prior to the date this Agreement is fully executed. Without limiting the generality of the foregoing, this release shall include, but not be limited to, any and all claims under the (a) Americans With Disabilities Act, as amended; (b) Title VII of the Civil Rights Act of 1964, as amended; (c) the Civil Rights Act of 1991; (d) 42 U.S.C. § 1981; (e) the Age Discrimination in Employment Act, as amended; (f) the Fair Labor Standards Act; (g) the Equal Pay Act; (h) the Employee Retirement Income Security Act, as amended; (i) the Consolidated Omnibus Budget Reconciliation Act; (j) the Rehabilitation Act of 1973; (k) the Family and Medical Leave Act; (l) the Civil Rights Act of 1966; (m) the California Fair Employment and Housing Act; (n) the California Constitution; (o) the California Labor Code; (p) the California Government Code; (q) the California Civil Code; and (r) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel, or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws. Plaintiffs Andy Herrera, Luis Herrera, and Santos Herrera also agree and acknowledge that they are not and have never been an "aggrieved employee" as defined in Labor Code section 2699(c), nor have they ever been "similarly aggrieved" to any other employee of Defendants' or the Released Parties. Plaintiffs Andy Herrera, Luis Herrera, and Santos Herrera each expressly acknowledge and agree they had, and have, no proper standing as required to prosecute or maintain any action under the California Private Attorneys General Act, Labor Code Section 2698 *et seq*. ("PAGA"). The foregoing releases and covenants were separately bargained for and are material elements of the Agreement

28. **Release of the Released Claims in Paragraph 25 for All Plaintiffs**. Plaintiffs Andy Herrera and Luis Herrera accept this settlement on behalf of themselves and each of the 32 Plaintiffs, and understand that Plaintiffs' acceptance of this settlement constitutes a full and

complete settlement and release of the Released Claims against the Released Parties, and Plaintiffs and each of them hereby fully, finally and completely release waive and discharge Released Parties from the Released Claims up to and including the Effective Date of this Agreement.

    a. The Parties understand this release does not include claims as to rights and liabilities related to the performance or nonperformance of this Agreement or other claims raised in this Action or to any conduct or activity which occurs after the Effective Date of this Agreement. The Parties understand this is a compromise settlement of disputed claims, and nothing herein shall be deemed or construed at any time or for any purpose as an admission of the merits of any claim or defense.

    b. Each Opt-In Plaintiff has opted–in to the FLSA collective in writing, and affirmatively consented to become a participant in this FLSA action and be bound by any judgment rendered. Therefore, an uncashed check will not constitute a rescission of the Released Claims.

29. **Waiver**. In connection with the releases provided in paragraphs 25 through 28, Plaintiffs expressly, knowingly, and voluntarily waive, relinquish, release, and forever discharge any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads::

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

A Plaintiff may hereafter discover facts other than or different from those which he or she knows or believes to be true with respect to the Released Claims (and for Plaintiffs Andy Herrera, Luis Herrera, and Santos Herrera, the claims released in Paragraph 27), but each said Plaintiff hereby expressly, knowingly, and voluntarily waives and fully, finally, and forever settles, releases, and discharges, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non–contingent claim that would otherwise fall within the definition of Released Claims (and for Plaintiffs Andy Herrera, Luis Herrera, and Santos Herrera, the claims released in Paragraph 27), whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each of said Plaintiffs Andy Herrera and Luis Herrera, on behalf of themselves and all Plaintiffs, and Santos Herrera on behalf of himself, expressly acknowledge shall be deemed by operation of the Final Approval Order and Judgment to have acknowledged, that the foregoing waiver was

separately bargained for and is a material element of the Agreement, and that they have been advised by their attorney(s) of the contents and effect of Section 1542 of the California Civil Code, and/or any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent.

30. **Knowledge of Parties.** The Parties understand and agree to the terms and conditions contained herein, and enter into this Agreement knowingly and voluntarily. Plaintiffs have been advised that they have the right to seek legal advice with respect to this Agreement, including the release, and have had the opportunity to consult with counsel. The Parties have investigated the facts pertaining to the settlement and the Agreement and all matters pertaining thereto as deemed necessary. The Parties have relied upon their judgment, belief, knowledge, understanding, and expertise after consultation with their respective counsel concerning the legal effect of the settlement and its terms. By signing this document, the Parties signify their full understanding and acceptance of the Agreement.

31. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of California and if necessary federal law. Any claim or action arising out of this Agreement shall be venued in the United States District Court for the Northern District of California.

32. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties regarding the claims being released herein. Unless ordered otherwise by the Court, any amendments to this Agreement must be in writing, signed by duly authorized representatives of Defendants and Plaintiffs, and must state that the Parties intend to amend the Agreement.

33. **Partial Invalidity.** Before declaring any provision of this Agreement invalid, the Court will first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents, so as to define all provisions of this Agreement valid and enforceable.

34. **Severability.** If any term or provision of this Settlement is held to be invalid or unenforceable, the remaining portions of this Settlement will continue to be valid and will be performed, construed, and enforced to the fullest extent permitted by law, and the invalid or unenforceable term will be deemed amended and limited in accordance with the intent of the Parties, as determined from the face of the Agreement, to the extent necessary to permit the maximum enforceability or validation of the term or provision.

35. **Waiver.** No waiver of any condition or covenant contained in this Agreement or failure to exercise a right or remedy by any of the Parties hereto will be considered to imply or constitute a further waiver by such Party of the same or any other condition, covenant, right, or remedy.

36. **Mutual Drafting.** The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement. The Parties agree the terms and conditions of this Agreement are the result of lengthy, intensive, arm's–length negotiations between the Parties and that neither Plaintiffs nor Defendants shall be considered the "drafter" of this Settlement for purposes of having terms construed against that Party. This Agreement will not be construed more strictly against one Party merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arm's–length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

37. **Captions and Interpretations.** Section, subsection, and paragraph titles or captions contained herein are inserted as a matter of convenience and for reference only and in no way define, limit, extend, or describe the scope of this Agreement or any provision thereof.

38. **Modification.** This Agreement may not be changed, altered, or modified, except in writing signed by the Parties and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

39. **Non–Admission.** Nothing in this Agreement shall be construed as or deemed to be an admission by any Party of any liability, culpability, negligence, or wrongdoing toward any other Party, or any other person, and the Parties specifically disclaim any liability, culpability, negligence, or wrongdoing toward the each other or any other person. Each of the Parties has entered into this Agreement with the intention to buy their mutual peace, and avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. Nothing herein shall constitute any admission by Defendants of wrongdoing or liability, or of the truth of any factual allegations in the Action. Nothing herein shall constitute any admission by Defendants regarding the merits of the claims in this Action, including but not limited to claims for unpaid wages under state and/or federal law. Nothing herein shall constitute an admission by Defendants that the Action was properly brought as a class, collective, or representative action other than for settlement purposes. To the contrary, Defendants have denied and continue to deny each and every material factual allegation and all claims. To this end, the settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in the Complaint in the Action; and are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

40. **Non–Evidentiary Use.** Neither this Agreement nor any of its terms, nor any statements or conduct in the negotiation or drafting of it, shall be offered or used as evidence by Plaintiffs individually or collectively, Defendants, or its, her, his, or their respective counsel, in

the Action, except as is reasonably necessary to effectuate this Agreement's purpose and terms. This Agreement may be used by Defendants and the Released Parties to bar, prove, or defend against any claim released herein by any Plaintiff in any judicial, quasi–judicial, administrative, or governmental proceeding.

41. **Media or Press.** Plaintiffs and Defendants, and their respective counsel, recognize and accept that the Parties to this Agreement desire and agree that the terms of this Agreement, the fact of the settlement embodied in this Agreement, the disposition of the Action, the Action, and all matters relating to the litigation of the Action, including discovery proceedings therein, and evidence obtained during the course of the Action, shall not be publicized, advertised, posted, or reported, nor presented to the media or press.

42. **Agreement Inures to Bind/Benefit Plaintiffs' Heirs and Company's Affiliates.** Plaintiffs hereby agree and understand this Agreement shall bind themselves and their heirs, executors, administrators and agents thereof, and that it inures to the benefit of Defendants, and their current and former owners, officers, directors, managers, supervisors, members, employees, operators, agents, representatives, subsidiaries, parents, affiliates or related companies, predecessors, successors, joint venturers, co–owners, joint employers, payroll providers, service providers, attorneys, insurers, shareholders, stockholders, partners, trustees, franchisors, franchisees, independent contractors, benefit plan fiduciaries, investors, legal representatives, assigns, assignees, and reinsurers.

43. **Costs and Fees.** The Parties shall each bear their own costs, attorneys' fees, expert fees, mediator fees, and other fees incurred in connection with this settlement, the Action and Plaintiffs' claims, except as otherwise specifically set forth herein.

44. **Authorization to Enter into Settlement.** The signatories hereto represent they are fully authorized to enter into this Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the settlement. If the Parties are unable to reach agreement on the form or content of any document needed to implement the settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

45. **No Prior Assignments.** The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right herein released and discharged except as set forth herein.

46. **Execution and Counterparts.** This Agreement is subject only to the execution of the Parties. However, the Agreement may be executed in one or more counterparts. All executed counterparts, and each of them, including facsimile, electronic signatures, scanned copies, and electronically mailed copies of the signature page, will be deemed to be one and the same

instrument provided that counsel for the Parties will exchange a fully executed Agreement. The Parties also agree that a facsimile, electronic, or scanned copy of the fully executed Agreement shall have the same force and effect as an original signed Agreement.

47. **Corporate Signatories.** Any person executing this Agreement or any such related document on behalf of a corporate signatory or on behalf of a partnership hereby warrants and promises, for the benefit of all Parties hereto, that such person has been duly authorized by such corporation or partnership to execute this Agreement or any such related document.

48. **Representation by Counsel.** The Parties acknowledge they have been represented by counsel throughout all negotiations preceding the execution of this Agreement, and this Agreement has been executed with the consent and advice of counsel and reviewed in full.

49. **Action to Enforce Agreement.** In any suit or court action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the other their attorneys' fees and costs, including expert witness fees.

50. **Effective Date.** This Agreement shall become effective following execution by all of the undersigned counsel for the Parties and the approval of the Court.

**THE PARTIES HAVE CAREFULLY READ THE FOREGOING AGREEMENT. THEY HAVE CONSULTED WITH LEGAL COUNSEL REGARDING THE FOREGOING AGREEMENT AND KNOW THE CONTENTS THEREOF AND SIGN THE SAME AS THEIR FREE, KNOWING, AND VOLUNTARY ACT AND DEED, BEING FULLY AWARE OF ITS FINAL AND BINDING EFFECT.**

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement and General Release on the dates set forth below.

**APPROVED, AGREED, AND ACCEPTED:**

Date:                                                                ANDY HERRERA

By: _____

Plaintiff Andy Herrera, on behalf of himself and all 32 collective action class members.

instrument provided that counsel for the Parties will exchange a fully executed Agreement. The Parties also agree that a facsimile, electronic, or scanned copy of the fully executed Agreement shall have the same force and effect as an original signed Agreement.

47. **Corporate Signatories.** Any person executing this Agreement or any such related document on behalf of a corporate signatory or on behalf of a partnership hereby warrants and promises, for the benefit of all Parties hereto, that such person has been duly authorized by such corporation or partnership to execute this Agreement or any such related document.

48. **Representation by Counsel.** The Parties acknowledge they have been represented by counsel throughout all negotiations preceding the execution of this Agreement, and this Agreement has been executed with the consent and advice of counsel and reviewed in full.

49. **Action to Enforce Agreement.** In any suit or court action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the other their attorneys' fees and costs, including expert witness fees.

50. **Effective Date.** This Agreement shall become effective following execution by all of the undersigned counsel for the Parties and the approval of the Court.

**THE PARTIES HAVE CAREFULLY READ THE FOREGOING AGREEMENT. THEY HAVE CONSULTED WITH LEGAL COUNSEL REGARDING THE FOREGOING AGREEMENT AND KNOW THE CONTENTS THEREOF AND SIGN THE SAME AS THEIR FREE, KNOWING, AND VOLUNTARY ACT AND DEED, BEING FULLY AWARE OF ITS FINAL AND BINDING EFFECT.**

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement and General Release on the dates set forth below.

**APPROVED, AGREED, AND ACCEPTED:**

Date: 8/9/2021

ANDY HERRERA

By: _[DocuSigned by: 56BB975DC7044FD]_
Plaintiff Andy Herrera, on behalf of himself and all 32 collective action class members.

LUIS HERRERA

Date: 8/9/2021  By: *Luis Herrera*
                                             6D50A54539B440B...
Plaintiff Luis Herrera, on behalf of himself and all 32 collective action class members.

SANTOS HERRERA

Date: 8/9/2021  By: _____
                                             7B4D1F4EDD2F4CB...
Santos Herrera, an individual

EOS IT MANAGEMENT SOLUTIONS INC.

Date: _____  By: _____
Patrick Downey
Defendant EOS IT Management Solutions, Inc.
Title:

EOS UNIFIED SOLUTIONS, INC.

Date: _____  By: _____
Patrick Downey
Defendant EOS Unified Solutions, Inc.
Title:

Page 14

DocuSign Envelope ID: 5C669294-9B74-49F8-88D1-C01A9F066F9D

LUIS HERRERA

Date: 8/9/2021    By: *Luis Herrera*
                      DocuSigned by: 6D50A54539B440B...

Plaintiff Luis Herrera, on behalf of himself and all 32 collective action class members.

SANTOS HERRERA

Date: 8/9/2021    By: *[signature]*
                      DocuSigned by: 7B4D1F4EDD2F4CB...

Santos Herrera, an individual

EOS IT MANAGEMENT SOLUTIONS INC.

Date: 8/10/2021    By: *P. Downey [signature]*

Patrick Downey
Defendant EOS IT Management Solutions, Inc.
Title:

EOS UNIFIED SOLUTIONS, INC.

Date: 8/10/2021    By: *P. Downey [signature]*

Patrick Downey
Defendant EOS Unified Solutions, Inc.
Title:

**APPROVED AS TO FORM ONLY:**

HODGES & FOTY, LLP

Date: 8/10/2021

By: _____
Don Foty (admitted pro hac vice)
Attorney for Plaintiffs

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Date: _____

By: _____
Amber S. Healy
Brian Martin
Attorneys for Defendants

**APPROVED AS TO FORM ONLY:**

HODGES & FOTY, LLP

Date: _____

By: _____
Don Foty (admitted pro hac vice)
Attorney for Plaintiffs

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Date: August 10, 2021

By: _____
Amber S. Healy
Brian Martin
Attorneys for Defendants

| Name | Allocation of Net Settlement |
|---|---:|
| Amato, Damiano | 0.032628931 |
| Amato, Malcom | 0.014146893 |
| Arambula, Bjorn | 0.042745379 |
| Atienza, Jeremy | 0.061370698 |
| Baker, Robert | 0.012708522 |
| Cabrera, Timothy | 0.013357986 |
| Corey, Antonio | 0.008147541 |
| Decker, Evan | 0.019360065 |
| Dominguez, John | 0.026618444 |
| Fowler, Ryan | 0.023385076 |
| Friedman, Barry | 0.019382014 |
| Herrera, Andy | 0.025645524 |
| Herrera, Luis | 0.028040623 |
| Herrera, Santos | 0.048927602 |
| Infante, Elvin | 0.029565963 |
| Loggins, Ronnel | 0.06307336 |
| Maser, Robert | 0.031805897 |
| Massis, Eric | 0.042100684 |
| Palacios, Marc | 0.05635785 |
| Peters, Cole | 0.032309454 |
| Pham, Hoa | 0.083311841 |
| Quesada, Manuel | 0.009407315 |
| Reyna, Domingo | 0.001451839 |
| Rodriguez, Jaime | 0.045526814 |
| Ruiz, Jansell | 0.012064748 |
| Sanchez, Christopher | 0.01668433 |
| Shippee, Matthew | 0.071665852 |
| Smith, Anthony | 0.023861515 |
| Villatoro-Arevalo, Danilo | 0.030705614 |
| Zelaya, Alex | 0.042733955 |
| Walk, Dawud | 0.024018327 |
| Whitaker, Jacob | 0.006889342 |
| Total | 0.999999998 |